UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET NUNN,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | No. 1:26-cv-4306-GSA<br>**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br>**(Docs. 11, 13)** |

## I. Introduction

Plaintiff Janet Nunn seeks judicial review of a final decision of Defendant Commissioner of Social Security denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is before the Court based on the parties' briefs. After reviewing the record, the undersigned finds that substantial evidence and applicable law support the ALJ's decision.

## II. Factual and Procedural Background

Plaintiff filed the application on April 5, 2023. The claim was denied initially on August 28, 2023, and on reconsideration on August 1, 2024. The ALJ held a hearing on October 7, 2025. On October 30, 2025, the ALJ issued an unfavorable decision. After the Appeals Council denied review on March 31, 2026, Plaintiff then appealed to this Court.

## III. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.

"This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations

omitted).

Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. See Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

"This is a highly deferential standard of review . . . ." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Id.; see, e.g., Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" Tackett, 180 F.3d at 1098 (quoting Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Id. (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

## IV. Evaluating a Claimant's Alleged Disability

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a

> disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education, and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

Again, errors in Social Security disability determinations are subject to harmless error analysis. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). "An error is harmless if it is 'inconsequential to the ultimate nondisability determination' . . . or 'if the agency's path may be reasonably discerned,' even if the agency 'explains its decision with less than ideal clarity[.]" Treichler, 775 F.3d at 1099 (citation omitted).

## V. The ALJ's Decision

At step one, the ALJ found that the claimant had not engaged in substantial gainful activity since December 1, 2021, the alleged onset date. AR 19.

At step two, the ALJ found that the claimant had the following severe medically determinable impairments: "osteoporosis, chronic obstructive pulmonary disease, and degenerative disc disease of the lumbar spine status-post arthroplasties." AR 19.

At step three, the ALJ found that the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). AR 23.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded as follows:

> I find that the claimant had the residual functional capacity to perform Light exertional-level work as defined in 20 CFR 404.1567(b) and SSR 83-10 (e.g., lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday), except that she can occasionally climb ramps and stairs, she cannot climb ladders, ropes, or scaffolds, she can occasionally stoop, kneel, crouch, crawl, or crawl, she cannot work around unprotected heights or moving dangerous machinery, and she needs a sit/stand option with the ability to change position every 15-20 minutes but could remain on task (20 CFR 404.1520(e)). AR 24.

At step four, the ALJ found that Plaintiff could perform her past relevant work as an office manager. AR 28.

The ALJ made no step five alternative finding.

Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since the alleged onset date of December 1, 2021. AR 29.

## VI. Issue Presented

Plaintiff sets forth one claim of error: "the ALJ erred in the determination of plaintiff's residual functional capacity." MSJ at 13. Under this heading, Plaintiff adds a more specific subheading: "The ALJ Erred by Independently Interpreting Medical Records

Regarding Ms. Nunn's COPD and Failing to Fully Develop the Record and Consider All Relevant Evidence." MSJ at 16

**A. Discussion**

**1. Relevant Law**

**a. RFC Generally**

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity (RFC). *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

**b. Duty to Develop the Record**

"In Social Security cases the ALJ has a special duty to fully and fairly develop the

record and to assure that the claimant's interests are considered." Smolen v. Chater, 80 F.3d at 1288 (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("In making a determination of disability, the ALJ must develop the record and interpret the medical evidence.") (citation omitted); However, the ALJ's duty to conduct an appropriate inquiry is triggered only when there is "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence." Tonapetyan, 242 F.3d at 1150 (citations omitted). When triggered, the ALJ "may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Id. (citations omitted).

A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011); Garcia v. Comm'r of Soc. *Sec.*, No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal. Apr. 17, 2020).

The ALJ is not permitted to fill the evidentiary gaps of the record by rendering a medical judgment and interjecting his own medical opinion to develop the RFC. See Tackett v. Apfel, 180 F.3d at 1102. "As a layperson, an ALJ is not qualified to extrapolate functional limitations from 'raw medical data' but may make reasonable inferences from medical evidence susceptible to a lay understanding." see Katie E. B. v. Kijakazi, No. 20CV2354-MDD, 2022 WL 4595062, at *8 (S.D. Cal. Sept. 30, 2022).

Finally, this independent duty to fully and fairly develop the record and to assure that a claimant's interests are considered extends to the represented as well as to the unrepresented claimant. Tonapetyan v Halter, 242 F.3d at 1150 (9th Cir. 2001).

**2. Analysis**

As set for the above, Plaintiff argues that "The ALJ Erred by Independently Interpreting Medical Records Regarding Ms. Nunn's COPD and Failing to Fully Develop the Record and Consider All Relevant Evidence". MSJ at 16.

Plaintiff begins her argument as follows:

> Here, the ALJ found Ms. Nunn's COPD to be a severe impairment. (AR 19) The ALJ referenced the July 2023 pulmonary function testing and chest X-ray which showed "chronic obstructive pulmonary disease changes", "moderate obstruction", and "moderate emphysematous changes of the lungs." (AR 19-20, citing AR 805-808, 852-85310; AR 26, citing same) The ALJ states that Ms. Nunn's lumbar spine disorder, osteoporosis, and COPD "reasonably cause the claimant's problems with lifting and needing to use an inhaler." (AR 26) The ALJ reasoned that because Ms. Nunn "testified that she does not use any supplemental oxygen", "a separate limitation to avoid exposure to respiratory irritants is not warranted" and "is an indication that her breathing problems are not as significant as alleged." (AR 27) Citing "normal respiratory examinations", the ALJ found a separate RFC limitation to avoid exposure to respiratory irritants was unjustified "and the limitation to light exertion addresses fully addresses [sic] fatigue and other impairment resulting from the claimant's chronic obstructive pulmonary disease." Id. The ALJ concluded that the RFC determination "is supported by the objective medical evidence and the persuasive opinion evidence" of the non-examining State Agency medical consultants, including "the medical evidence both prior to and since Dr. Ancinas' and Dr. Bobba's reviews" showing "normal breathing." (AR 28).
>
> MSJ at 16

From this explanation Plaintiff argues:

> The ALJ's RFC determination is legally insufficient. Importantly, the non-examining medical consultants, Dr. Acinas and Dr. Bobba -- upon whose opinions the ALJ relied informulating the RFC -- did not consider Ms. Nunn's impairment of COPD. (AR 65-67, 74-76) The record contained no medical opinion interpreting the functional limitations resulting from Ms. Nunn's COPD. Lacking any such medical opinion, the ALJ's duty to further develop the record was triggered, warranting either a consultative examination or medical expert opinion by a physician who had access to Ms. Nunn's medical

> records.
>
> MSJ at 16 & 17

Plaintiff's argument continues:

> By considering Ms. Nunn's July 2023 pulmonary function testing (which had no accompanying medical opinion on how it affected Ms. Nunn's functioning), the ALJ impermissibly used her own lay knowledge to make medical interpretations of testing results.
>
> MSJ at 17

The ALJ's hearing decision explains how the ALJ made her finding regarding Plaintiff's symptoms:

> In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. In considering the claimant's symptoms, I must follow a two-step process. First, I must determine whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of the claimant's symptoms are not substantiated by objective medical evidence, I must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do basic work activities. AR 25

Next, the ALJ addressed Plaintiff's subjective statements concerning her breathing:

> Her breathing is not good, she has to be on a nebulizer machine three to four times a day for 8-12 minutes at a time. She uses a rescue inhaler when air quality is bad on average twice or three times per day. AR 25

The ALJ continued by setting out the relevant objective evidence:

> In July 2023, a pulmonary function test was suggestive of emphysema and moderate obstruction, and a chest x-ray showed chronic obstructive pulmonary disease changes and moderate emphysematous changes of the lungs (9F/71-74 and 118-119). These severe impairments reasonably cause the claimant's problems with lifting and needing to use an inhaler. AR 26.

The ALJ then explained:

> The claimant testified that she does not use any supplemental oxygen, thus a separate limitation to avoid exposure to respiratory irritants is not warranted. Further, a December 2021 examination showed lungs that were clear to auscultation with no rales, wheezes, rhonchi, non-labored breathing, or use of accessory muscles for respiration (2F/26). An October 2022 examination indicated a dry cough but also normal pulmonary effort and breath sounds, no respiratory distress, and no wheezing, rhonchi, or rales (e.g., 2F/87; 9F/21). December 2022 and January 2023 examinations indicated normal pulmonary effort, no respiratory distress, and normal breath sounds (9F/14 and 17). A February 2023 examination indicated frequent dry cough but no stridor, no accessory muscle usage, no respiratory distress, and no wheezing, rales, or decreased breath sounds (9F/11). A May 2023 examination showed normal breath sounds (9F/9). June and July 2023 examinations showed non-labored breathing with no use of accessory muscles for respiration (2F/8, 10, and 127). Examinations in August 2023 and in March and August 2024 showed normal respiratory effort, and her lungs were clear to auscultation (e.g., 5F/2 and 5; 11F/4). I find that these normal respiratory examinations also do not justify a separate limitation to avoid exposure to respiratory irritants, and the limitation to light exertion addresses fully addresses fatigue and other impairment resulting from the claimant's chronic obstructive pulmonary disease. AR 28.

Next, in regard to the medical evidence both prior and subsequent to Drs. Ancinas' and Bobba's reviews the ALJ stated:

> As discussed above, the medical evidence both prior to and since Dr. Ancinas' and Dr. Bobba's reviews shows, for example, normal gait, no use of an assistive device, and <u>normal breathing</u>. AR 28 (emphasis added).

Turning to Plaintiff's argument that because the "record contained no medical opinion interpreting the functional limitations resulting from Ms. Nunn's COPD. Lacking any such medical opinion, the ALJ's duty to further develop the record was triggered, warranting either a consultative examination or medical expert opinion by a physician who

had access to Ms. Nunn's medical records." MSJ at 16 &17.

However, the lack of a medical opinion in and of itself does not create an ambiguity or inadequacy because the RFC is not a medical opinion and need not mirror one. See 20 C.F.R. § 416.927(d)(2) ("the final responsibility for deciding [RFC] is reserved to the Commissioner"); "ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination." Bufkin v. Saul, 836 F. App'x 578, 579 (9th Cir. 2021). There is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). In addition, the regulations provide that "The decision to purchase a consultative examination will be made on an individual case basis," not that it will be purchased in every case. 20 C.F.R. 404.1519.

Plaintiff further asserts that, "By considering Ms. Nunn's July 2023 pulmonary function testing (which had no accompanying medical opinion on how it affected Ms. Nunn's functioning), the ALJ impermissibly used her own lay knowledge to make medical interpretations of testing results." MSJ at 17. Here, Plaintiff is most likely correct as various testing results in this case do not appear readily comprehensible by a layperson, for example: 1- "chronic obstructive pulmonary disease changes", **2**-"moderate obstruction," and, **3**- "moderate emphysematous changes of the lungs," (AR 19-20, citing AR 805-808, 852-853, 888-889). However, "ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence," Farlow, 53 F.4th at 488. The mere presence of raw medical data in a set of records doesn't necessarily imply that the ALJ attempted to interpret that information. Importantly, "As a layperson, an ALJ is not qualified to extrapolate functional limitations from 'raw medical data' but may make reasonable

inferences from medical evidence susceptible to a lay understanding." see Katie E. B. v. Kijakazi, No. 20CV2354-MDD, 2022 WL 4595062, at *8 (S.D. Cal. Sept. 30, 2022) (emphasis added).

That is what the ALJ did here. For instance, the ALJ did not purport to determine whether "emphysematous changes" and other expert medical terminology supported light exertional work with no restriction on respiratory irritants. Rather, the ALJ observed the manifestations of these terms on physical exam and drew reasonable inferences from uncomplicated facts as quoted above, including normal breath sounds, clear lungs, no wheezing, and no respiratory distress.

Plaintiff also contends:

> Moreover, the ALJ's cursory analysis primarily consisted of refences to "normal respiratory examinations". (AR 27, 28) The ALJ failed to discuss Ms. Nunn's multiple visits to the Emergency Room due to exacerbations of her COPD. (AR 754-756 [10/25/2022]; 744-747 [2/22/2023]; 742- 743 [5/23/2023]) The ALJ similarly ignored the October 2022 assessment by Ms. Nunn's primary care physician that her COPD was worsening, demonstrated by "weight loss, severe fatigue, lack of appetite, low anion gap, [and] chronic infections" [AR 888-889], as well as pulmonologist Dr. Balasubramanian's assessment in June 2023 that her COPD was in a "high risk" category [AR 866].
>
> MSJ at 17

However, Plaintiff's reference to COPD exacerbation is not exactly emblematic of the broader record as the following shows:

1- Beginning with the first ER visit, (AR 754-756 [10/25/2022]), it does not appear that it was due to exacerbations of her COPD. Here, the ER History of illness noted "with history of asthma and chronic obstructive pulmonary disease presents with constant cough, sometimes with phlegm, onset last week. Associated with fever, sore throat, and chest tightness." AR 754. On Review of systems, respiratory was "Positive for cough and chest tightness. Negative for shortness of breath." Id. On physical exam, Pulmonary noted

"Pulmonary effort is normal. No respiratory distress." As to breath sounds, it noted "Normal breath sounds. No wheezing, rhonchi or rales. Comments: Dry cough on exam." AR 755. Chest x-ray noted "clear lungs, no acute pulmonary process." Id. It was also noted in the Discussion:

> Discussion: Pt presents for fevers, productive cough, sore throat and chest tightness. Pt remains afebrile without leukocytosis. Troponin remains within normal limits which lowers the risk of acute coronary syndrome. Viral panel, influenza and covid swabs are negative for infection. All other labs are reassuring. chest x-ray is negative for pneumonia, bronchitis, pleural effusions, asthma exacerbation or any other acute findings. Pt offered a breathing treatment for asthma exacerbation concerns, but Pt declines wanting a breathing treatment at this time. Pt is not requiring supplemental oxygen at this time as their saturation levels remain within normal limits. Pt encouraged to fo low-up with their oxygen PCP for any continued flu-like symptoms, SOB or asthma concerns. Pt feels safe for discharge home with outpatient follow-up. Strict return precautions given. AR 756.

The clinical impression was: Persistent dry cough, Fever in other diseases, and History of COPD.

In sum, because this first ER visit does not appear to be the result of a COPD flare up, it was not error for the ALJ to omit a discussion of it.

**2**- As for the second visit 744-747 [2/22/2023], Plaintiff presented with "Influenza Signs and Symptoms + fever, cough and congestion x2 weeks." AR 744-745. Pulmonary and breath sounds were normal on exam: "Pulmonary: Effort: No accessory muscle usage or respiratory distress. Breath sounds: No stridor. No decreased breath sounds, wheezing or rales." AR 745. Discussion stated:

> Discussion: 51 y.o. female with a history of COPD presents with cough and shortness of breath. Differential include viral upper respiratory infection, viral bronchitis, community-acquired pneumonia, exacerbation of asthma or COPD, exacerbation of CHF. Patient likely has a viral upper respiratory infection and/or bronchitis based on the history and physical exam. Chest diagnoses x-ray is negative for pneumonia. Patient <u>also likely has an exacerbation of COPD</u> based on the history, physical exam, and chest x-ray. Wil write for Prednisone and Tessalon perles. Return precautions provided. AR 746 (emphasis added).

This discussion does indicate that COPD exacerbation was likely a factor, however this single ER visit contrasts to numerous other examples of normal pulmonary physical exams, both as cited by the ALJ (see above), and to the two ER visits noted here.

**3**- Finally, as for the third visit, (742- 743 [5/23/2023]), the record of this visit reflects:

> The patient is a 51 y.o. female, who presents to the ED with moderate chest pain radiates to left side of back began 1830 this evening while relaxing in bed on phone. Pain is worse with breathing. Patient using her nebulizer more frequently past few days. History of tobacco use, quit July 2020 but had a few cigarettes today and reports 1 other cigarette a few weeks ago. Associated urinary frequency and pressure sensation in abdomen. Denies leg swelling, abdominal pain, nausea, or vomiting. AR 742.

Pulmonary and breath sounds were shown to be normal on exam: "Effort: Pulmonary effort is normal. No respiratory distress. Breath sounds: Normal breath sounds." AR 743.

Discussion indicates:

> Ddx includes: acute coronary syndrome, pulmonary embolism, aortic dissection, pneumonia, pneumothorax. <u>Unclear etiology of the patient's symptoms</u>. Unlikely acute coronary syndrome, pulmonary embolism, or aortic dissection by history. ECG and troponin are negative for evidence of cardiac ischemia. Pulmonary embolism unlikely (with negative D-dimer). <u>Chest x-ray is clear</u> with no sign of pneumonia or pneumothorax. Emergency department evaluation is otherwise reassuring. Patient discharged with instructions for primary care physician fo low up within the next 48 hours. Return precautions given. AR 743.

Given the normal findings during this third visit, and the unclear etiology of Plaintiff's symptoms, this does not suggest COPD exacerbation as Plaintiff contends and therefore the ALJ did not err in omitting discussion of it.

Plaintiff next states, "The ALJ similarly ignored the October 2022 assessment by Ms. Nunn's primary care physician that her COPD was worsening, demonstrated by 'weight loss, severe fatigue, lack of appetite, low anion gap, [and] chronic infections.'" (MSJ at 17, citing AR 888-889). However, even if these symptoms were the result of Plaintiff's COPD, as

Defendant points out, "She does not attempt to identify what limitations are supposedly missing from the RFC. She simply asserts that if her RFC were different, the outcome of her case "may have been different" "ECF No. 11 at 18".

Resp at 7, ECF No 13.

As to Plaintiff's statement that "pulmonologist Dr. Balasubramanian's assessment in June 2023 that her COPD was in a 'high risk' category" (MSJ at 17, citing AR 866), Plaintiff's respiratory exam findings again noted "lungs clear to auscultation bilaterally, no rales, wheezes or rhonchi, nonlabored breathing, no use of accessory of muscles of respiration." AR 866.

In the end, with the one exception of the 2nd ER visit, the other two ER visits along with the one pulmonogist visit note the same normal pulmonary and respiratory findings which the ALJ highlighted in other records. The ALJ identified these other records as follows:

> Further, a December 2021 examination showed lungs that were clear to auscultation with no rales, wheezes, rhonchi, non-labored breathing, or use of accessory muscles for respiration (2F/26). An October 2022 examination indicated a dry cough but also normal pulmonary effort and breath sounds, no respiratory distress, and no wheezing, rhonchi, or rales (e.g., 2F/87; 9F/21). December 2022 and January 2023 examinations indicated normal pulmonary effort, no respiratory distress, and normal breath sounds (9F/14 and 17). A February 2023 examination indicated frequent dry cough but no stridor, no accessory muscle usage, no respiratory distress, and no wheezing, rales, or decreased breath sounds (9F/11). A May 2023 examination showed normal breath sounds (9F/9). June and July 2023 examinations showed non-labored breathing with no use of accessory muscles for respiration (2F/8, 10, and 127). Examinations in August 2023 and in March and August 2024 showed normal respiratory effort, and her lungs were clear to auscultation (e.g., 5F/2 and 5; 11F/4). I find that these normal respiratory examinations also do not justify a separate limitation to avoid exposure to respiratory irritants, and the limitation to light exertion addresses fully addresses fatigue and other impairment resulting from the claimant's chronic obstructive pulmonary disease. AR 28.

Therefore, the ALJ did not cherry pick the record as Plaintiff contends. The ALJ

committed no error in declining to order a consultative exam, nor in independently interpreting physical exam findings, and nor in formulating the RFC based on those findings. See Rounds v. Comm'r, 807 F.3d 996, 1006 (9th Cir. 2015) (ALJ is responsible for "translating and incorporating clinical findings into a succinct RFC,").

As Defendant points out, Plaintiff does not indicate what changes she would like to see in the RFC, such as exertional capacity like weight lifting or standing/walking, or environmental restrictions on respiratory irritants. The Ninth Circuit suggests that Plaintiff should articulate what changes she believes are warranted. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) ("Valentine does not detail what other physical limitations follow from the evidence of his knee and should injuries, besides the limitations already listed in the RFC. We reject any invitation to find that the ALJ failed to account for Valentine's injuries in some unspecified way.") (emphasis added).

Thus, Plaintiff has not established that the ALJ failed to develop the record. The ALJ reasonably relied on physical examinations noting normal respiratory and pulmonary findings which constituted sufficiently substantial evidence to support the RFC.

## VII. Conclusion and Order

For the reasons stated above, substantial evidence and applicable law do support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, it is **ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 11 is, **DENIED.**
2. Defendant's Cross Motion, ECF No. 13, is **GRANTED**.
3. The Commissioner's decision is **AFFIRMED.**
4. That the Clerk of Court is directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

IT IS SO ORDERED.

Dated: **October 7, 2026** **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE